```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
E.C. CONTRACTING, INC.,                         :
                                                :
                            Plaintiff,          :
                                                :      REPORT AND RECOMMENDATION
              - against -                       :
                                                :      19 Civ. 6813 (FB) (VMS)
D.F. PRAY, INC., FIDELITY AND DEPOSIT           :
COMPANY OF MARYLAND, and ZURICH                 :
AMERICAN INSURANCE COMPANY,                     :
                                                :
                            Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```

**Vera M. Scanlon, United States Magistrate Judge:**

Defendant D.F. Pray ("D.F. Pray") moved for an Order pursuant to Federal Rule of Civil Procedure 14(a)(1) granting leave to file a third-party complaint against Maple Drake Austell Owner LLC (the "Owner"). For the reasons set forth below, this Court respectfully recommends that the motion for leave to commence a third-party action be denied.

**I.    BACKGROUND**

    **A.    The Underlying Action**

This action arises out of a construction project to convert property located at 47-37 Austell Place, Long Island, Queens (the "Property") from an industrial building to Class A retail and office space (the "Project"). See ECF No. 1 ¶¶ 3, 10. DF Pray was the general contractor retained by the Owner to complete the Project. See id. ¶ 10; ECF No. 18 at 1. DF Pray retained Plaintiff E.C. Contracting, Inc. ("ECC") as a subcontractor to fabricate, deliver and install a curtain wall system and windows for the Project for a sum of $2,935,000.00 (the "Subcontract"). See ECF No. 1 ¶ 11; ECF No. 18 at 1. ECC was responsible for providing labor, materials and

1

equipment in connection with the work to be performed under the Subcontract. See ECF No. 1 ¶ 11; ECF No. 18 at 1.

ECC alleges that it provided a total value of labor and materials in the amount of $455,008.26 which remains unpaid by DF Pray despite due demand. See ECF No. 1 ¶ 15. ECC brought three causes of action against DF Pray seeking repayment of amounts due: (i) breach of contract; (ii) quantum meruit; and (iii) account stated. See id. ¶¶ 9-25. ECC also brought claims against insurance providers Zurich American Insurance Company ("Zurich") and Fidelity and Deposit Company of Maryland ("Fidelity") which failed to pay ECC under a payment bond, numbered 09244451, for the labor and materials furnished towards the Project. See id. ¶¶ 26-37. According to ECC, the payment bond in the amount of $25,033,675.00 was meant to guarantee prompt payment of all monies to subcontractors like ECC for work on the Project. See id. ¶ 28. Defendants D.F. Pray, Zurich and Fidelity (together, "Defendants") filed an answer generally denying ECC's allegations and asserting ten boilerplate affirmative defenses. See ECF No. 12.

This Court held an initial conference. See Dkt. Minute Entry 3/17/2020; ECF No. 16. Defendants informed the Court that there was an ongoing dispute between D.F. Pray and the Owner in the state court arising from the Project and related to this case. See ECF No. 16 at 5:14-7:7. According to Defendants, ECC was partially responsible for the delay damages asserted by the Owner against D.F. Pray. See id. Defendants expressed an interest in commencing a third-party action against ECC in state court, commencing a third-party action against the Owner in this action, or asserting counterclaims against ECC in this action. See id. at 5:14-7:7, 8:4-15. The Court gave Defendants leave to bring any motion for leave to commence a third-party action or amend its answer to assert counterclaims. See id. D.F. Pray timely filed a

2

motion for leave to commence a third-party action against the Owner and to assert counterclaims against ECC.[1]  See ECF No. 17.

### B. The Proposed Third-Party Complaint

According to the proposed third-party complaint, D.F. Pray was retained by the Owner as a general contractor to complete the Project.  See ECF No. 17-1 ¶ 1.  On or about August 29, 2016, D.F. Pray and the Owner entered into a standard cost-based contract ("General Contract") whereby D.F. Pray would provide labor and materials and would be paid the cost of the work, plus a fee, with a guaranteed maximum price.  See id. ¶ 2.  Through an amendment dated February 13, 2017, the Owner agreed to a guaranteed maximum price of $25,033,676 and set the date of completion of the Project for November 3, 2017.  See id. ¶ 15.  D.F. Pray and Owner also agreed that if the work on the Project was delayed by the Owner, its architect, or by changes in the work, the completion date would be extended and the guaranteed maximum price would be increased as necessary.  See id. ¶ 19.  Under the General Contract, Owner was required to pay for any changes in the work and to continue making payments to D.F. Pray without delay.  See id.  After signing the amendment, D.F. Pray provided the Owner with a payment bond and performance bond in the amount of the guaranteed maximum price, $25,033,676, identifying the Owner as the principal and D.F. Pray as the obligee.  See id. ¶ 20.  The payment bond was meant to protect the Owner from demands, liens or suits by any subcontractors or suppliers.  See id. ¶ 21.

A few months into the Project, issues arose between D.F. Pray and the Owner.  After executing the General Contract, D.F. Pray and the Owner began disagreeing as to whether the

---

[1] The motion for leave to amend answer to assert counterclaims against ECC is resolved in a separate Order.

payment provisions complied with the New York Prompt Pay Act, N.Y. Gen. Bus. Law § 756. See id. ¶¶ 23-27. D.F. Pray took the position that the payment provisions violated the New York Prompt Pay Act because the General Contract provided for payment 45 days after receipt of application for payment when the statute mandated payment within 37 days. See id. ¶ 28. The Owner disagreed that the New York Prompt Pay Act applied to the Project. See id. According to D.F. Pray, the Owner's refusal to comply with the Act resulted in significant delays in payments to D.F. Pray and its subcontractors. See id. ¶¶ 29, 43-45, 51.

The problems between D.F. Pray and the Owner worsened as a result of delays on the Project. D.F. Pray alleged that work on the Project was affected by Owner-caused delays, including failure to obtain permits, incomplete or defective designs, and refusal to process and approve change orders. See ECF No. 17-1 ¶¶ 34-35. Although the Owner allegedly acknowledged that there were "excusable delays," the Owner refused to extend the completion date of the Project, refused to pay additional costs sustained by D.F. Pray as a result of the delays, and constructively accelerated the work schedule of D.F. Pray, ECC and other subcontractors. See id. ¶¶ 36-37, 46, 52. Even though D.F. Pray had completed approximately ninety percent of its work on the Project by August 2018, D.F. Pray was allegedly owed more than $1.9 million from the Owner. See id. ¶ 46. By letter dated August 6, 2018, D.F. Pray demanded that the Owner recognize additional costs associated with Owner-caused delays. See id. ¶ 52. The Owner did not respond to D.F. Pray's demand. See id. ¶ 53. Instead, on August 9, 2018, the Owner requested D.F. Pray to review and execute an agreement (the "Subordination Agreement") in connection with a financing. See id. The Subordination Agreement stated that the Owner's ability to complete the Project and pay general contractor fees was conditioned on the lender making a loan. See id. ¶ 54. D.F. Pray refused to sign the Subordination Agreement

because it set forth false representations that (i) neither D.F. Pray nor the Owner was in default under the General Contract and that (ii) all sums due and payable under the General Contract had been paid in full.  See id. ¶ 54, ¶ 48 [sic.] at 13.

On August 13, 2018, D.F. Pray filed a notice of mechanic's lien in the amount of $2,199,708.50 with the Queens County Clerk and served a copy on the Owner.  See id. ¶ 49 [sic.] at 13.  After receipt of the mechanic's lien, the Owner demanded that D.F. Pray sign the Subordination Agreement and withdraw its lien.  See id. ¶ 53 [sic.] at 14.  The Owner allegedly threatened to back-charge D.F. Pray for any costs arising from D.F. Pray's refusal to sign the Subordination Agreement and threatened that it would not make any payment under the General Contract until the lien was removed.  See id. ¶ 54 [sic.] at 14.  D.F. Pray refused to withdraw its lien or sign the Subordination Agreement.  See id. ¶ 58 [sic.] at 15.  By letter dated August 30, 2018, the Owner issued a notice of claim on D.F. Pray's performance bond.  See ECF No. 17-1 ¶ 60.  In the notice of claim, the Owner asserted that D.F. Pray was in breach of the General Contract because its performance was inadequate and it had filed an improper mechanic's lien. See id. ¶ 61.  By letter dated September 6, 2018, the Owner issued a notice of default on D.F. Pray, again requesting that the mechanic's lien be withdrawn.  See id. ¶¶ 67-68.

In an effort to resolve the outstanding payment issues and complete the Project, D.F. Pray and the Owner conferred in good faith.  See id. ¶ 69.  The Owner approved a series of undisputed change orders and construction change directives, and it expedited the funding of past-due applications for payment for May through July 2018.  See id. ¶¶ 69-70.  On March 12, 2019, the Owner issued a notice of substantial completion.  See id. ¶¶ 71-72.

The issues between D.F. Pray and the Owner did not end.  On May 9, 2019, D.F. Pray submitted an application for payment ("Application No. 30") in the amount of $721,305.39.  See

id. ¶ 73. By letter dated May 13, 2019, the Owner withheld payment of Application No. 30 based on D.F. Pray's refusal to withdraw the mechanic's lien. See id. ¶ 74. On August 1, 2019, D.F. Pray provided the Owner a notice of completion and requested that the Owner resolve any impediments to completing the Project. See id. ¶ 84. On September 20, 2019, the Owner filed an action in the New York County Supreme Court seeking to recover approximately $12 million. See id. ¶ 87; ECF No. 22-1. The Owner alleged that D.F. Pray was responsible for a 13-month delay in the Project, resulting in, inter alia, damages arising from lost rents and carrying costs. See ECF No. 17-1 ¶ 88; ECF No. 22-1 ¶¶ 43, 78, 80-84. By letter dated November 4, 2019, the Owner issued a notice of contract termination stating that D.F. Pray had abandoned the Project, failed to timely achieve substantial completion, and performed defective work. See ECF No. 17-1 ¶¶ 89-90. The Owner terminated the General Contract for cause and locked D.F. Pray out of the Project. See id. ¶ 94. According to D.F. Pray, the Owner intentionally withheld more than $3.7 million from D.F. Pray and its subcontractors, and demanded work without payment. See id. ¶ 82. Based on the for-cause termination, the Owner claimed to be contractually entitled to withhold amounts due to D.F. Pray. See id. ¶ 95.

Based on these allegations, D.F. Pray alleged four claims against the Owner: (i) breach of contract relating to the Owner's refusal to make timely progress payments, to extend the completion deadline or to pay for extra work; (ii) breach of the covenant of good faith and fair dealing for, inter alia, retaliating against D.F. Pray; (iii) violation of the Trust Funds Act, N.Y. Lien Law §§ 70, et seq., by failing to identify and account for receipt and payment of trust funds; and (iv) declaratory relief finding the Owner in default under the General Contract. See ECF No. 17-1 ¶¶ 102-120.

Through its motion, D.F. Pray seeks to resolve all claims relating to the Project in a single forum so that the claims may be uniformly and efficiently resolved.  See ECF No. 17 at 1.  D.F. Pray argued that impleader is appropriate because the proposed third-party complaint and ECC's main complaint "share the same core operative facts, seek to resolve interrelated issues and would be expected to be tried in a single proceeding."  See id. at 3, 5.  ECC opposed the motion for impleader for three reasons: (i) D.F. Pray's claims against the Owner are not derivative of or dependent on the resolution of ECC's claims against D.F. Pray; (ii) D.F. Pray is using impleader to consolidate tangentially related claims; and (iii) impleader would be destructive to the interest of judicial economy in this case.  See ECF No. 22.

## II. DISCUSSION

### A. Motion For Leave To File A Third-Party Complaint

D.F. Pray seeks leave to file a third-party complaint against the Owner asserting four claims: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) violation of the Trust Funds Act; and (iv) declaratory relief.  This Court respectfully recommends denying leave.

Rule 14(a)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  If the defendant seeks to file a third-party complaint more than 14 days after serving its original answer, it must obtain leave of court.  See id.  "A district court has considerable discretion in determining a Rule 14(a) motion." Capitol Records, Inc. v. City Hall Records, Inc., No. 07 Civ. 6488 (LTS) (KNF), 2008 WL 2811481, at *2 (S.D.N.Y. July 18, 2008); see East Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co., 490 F.2d 1234, 1246 (2d Cir. 1973).

7

A third-party claim may be asserted when the third party's liability is somehow dependent on the outcome of the main action or when the third party is secondarily liable to the defendant. See, e.g., Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984) (noting that third-party claim is appropriate where third-party defendant's liability is "dependent upon the outcome of the main claim" or the third-party defendant is "potentially secondarily liable as a contributor to the defendant"); Falcone v. MarineMax, Inc., 659 F. Supp. 2d 394, 401–02 (E.D.N.Y. 2009) ("Regardless of the type of claim asserted, [t]he outcome of the third-party claim must be contingent on the outcome of the main claim.") (citation & internal quotation marks omitted) (alteration in original); Siemens Westinghouse Power Corp. v. Dick Corp., 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. In other words, the outcome of the third-party claim must be contingent on the outcome of the main claim[.]") (citation & internal quotation marks omitted). Thus, "[t]he traditional grounds for a third-party action are indemnification, contribution, or subrogation." Intellipayment, LLC v. Trimarco, No. 15 Civ. 1566 (JFB) (GRB), 2016 WL 1239261, at *3. The party seeking to implead a third party bears the burden of showing that impleader is appropriate. See Schoenholtz v. Doniger, No. 83 Civ. 2740, 1984 WL 374 (IBC), at *5 (S.D.N.Y. May 4, 1984) ("[A] defendant attempting to implead a third party bears the burden of showing that if he is found liable to the plaintiff, then the third party will in turn be liable to him.").

As an initial matter, D.F. Pray's proposed third-party complaint does not allege traditional third-party claims of indemnification, contribution or subrogation against the Owner for ECC's alleged damages. In the proposed third-party complaint, D.F. Pray asserts claims of

8

breach of contract, breach of the covenant of good faith and fair dealing, breach of the Trust Funds Act and declaratory judgment against the Owner. That D.F. Pray's proposed third-party action involves the same Project as ECC's complaint against D.F. Pray is insufficient to warrant leave to file a third-party complaint. See, e.g., Blais Constr. Co. v. Hanover Square Assocs.-I, L.P., 733 F. Supp. 149, 152 (N.D.N.Y. 1990) ("[T]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough."); Prudential Ins. Co. of Am. v. BMC Indus., Inc., 113 F.R.D. 100, 102 (S.D.N.Y. 1986) (noting that a "third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim"). The claims asserted against the Owner in D.F. Pray's proposed third-party complaint are not derivative of or secondary to ECC's claims as required by Rule 14. Indeed, such claims are not contingent upon the resolution of ECC's claims against D.F. Pray: whether, under the Subcontract or New York common law, D.F. Pray owes the amount of $455,008.26 for the total value of labor and materials that ECC provided to the Project. That is, such claims are not limited to whether the Owner is partially or wholly liable for the unpaid labor and material costs allegedly due to ECC. Instead, D.F. Pray's proposed third-party action concerns whether the Owner improperly delayed payment to D.F. Pray, impeded D.F. Pray's ability to complete the Project by the date of completion, improperly refused to extend the date of completion, prevented D.F. Pray from realizing the financial benefits of any cost savings, delayed progress payments, and retaliated against D.F. Pray for filing a mechanic's lien and refusing to sign the Subrogation Agreement. Above and beyond the relief sought by ECC, D.F. Pray seeks to use its proposed third-party complaint as a means of getting paid by the Owner for the entire Project: alleged unpaid contract balance of $3,277,000.02 plus approximately $4 million in alleged unapproved change orders. See ECF No. 17-1 ¶ 96. Courts have found that such third-party

9

claims which raise affirmative and equitable claims that involve different legal and factual issues are inappropriate under Rule 14. See, e.g., Doucette v. Vibe Records, Inc., 233 F.R.D. 117, 120 (E.D.N.Y. 2005) (dismissing third-party complaint that sought affirmative and equitable relief against third party defendant that were not dependent on the outcome of the main action); Siemens, 299 F. Supp. 2d at 248 (same); Blais Constr., 733 F. Supp. at 152 (holding that third-party claims are not appropriate under Rule 14 where the legal and factual issues surrounding the claims are independent of those that are involved in the resolution of the main action). A third-party complaint is a "narrow device." Doucette, 233 F.R.D. at 120. This Court finds that D.F. Pray's proposed third-party complaint is improper pursuant to Rule 14 because it fails to set forth claims against the Owner that are derivative of or dependent upon the claims asserted by ECC.

Nonetheless, D.F. Pray argues that the proposed third-party complaint is proper. See ECF No. 17 at 4-5. In advancing this argument, D.F. Pray places heavy reliance on International Paving Systems, Inc. v. Van-Tulco, Inc., 866 F. Supp. 682 (E.D.N.Y. 1994). International Paving Systems involved the renovation of the St. George Ferry Terminal in Staten Island. See id. at 685. The City of New York entered into a contract with Van-Tulco, Inc., whereby Van-Tulco was the general contractor for the project and liable for the payment of subcontractors furnishing labor and materials for the project. See id. Van-Tulco entered into a subcontract with AVA Construction, Inc. whereby AVA would supply and install latex-modified concrete on the ramps of the ferry terminal. See id. Shortly after installation, the latex concrete showed signs of cracking and delamination. See id. The City withheld payment of the outstanding contract balance to Van-Tulco pending judicial determination of the cause of the cracking and delamination. See id. at 686. AVA sued Van-Tulco for monies allegedly owed under the subcontract for properly supplying and installing the latex concrete. See id. Van-Tulco

10

counterclaimed against AVA on the ground that cracking and delamination of the latex concrete was due to defects in the workmanship and materials furnished by AVA, and it also brought a third-party action against the City asserting that the latex concrete was installed according to plan specifications and seeking monies owed for the concrete work on the Project and the remaining contract balance. See id. The court considered whether the City was properly impleaded in the action. See id. The court found that Van-Tulco's third-party claim against the City was dependent on the resolution of the action between AVA and Van-Tulco because if AVA properly supplied and installed the latex concrete at the Project and were entitled to payment, then Van-Tulco would be entitled to recover from the City for the latex-concrete work. See id. at 687. The court also noted that the subcontract agreement included a provision that AVA would receive payment after Van-Tulco received payment from the City. See id. at 687 n.1. Drawing a parallel to International Paving Systems, D.F. Pray argues that its proposed claims against the Owner are also dependent upon the resolution of ECC's claim for damages because the Owner is allegedly withholding monies that would be used to pay ECC. See ECF No. 17 at 4-5; ECF No. 17-1 ¶ 101.

This Court disagrees and finds that International Paving Systems is distinguishable. In International Paving Systems, the claims between AVA and Van-Tulco and the claims between Van-Tulco and the City depended on whether AVA properly supplied and installed the latex concrete. Here, ECC's claims against D.F. Pray depend on the question whether ECC properly fabricated, delivered and installed a curtain wall system and windows for the Project.[2] On the

---

[2] D.F. Pray may also argue that ECC's claims against D.F. Pray also depends on the question whether ECC timely completed its work pursuant to the terms of the Subcontract. It is worth noting that, according the Owner's New York County Supreme Court complaint, the Project was already significantly delayed beyond the completion date even before ECC's work began. See ECF No. 22-1 ¶ 46 (alleging that ECC's curtain-wall installation was delayed until February 2018).

11

other hand, D.F. Pray's proposed third-party claims against the Owner depend on whether the Owner is responsible for delays to the Project and improperly withheld approval for additional costs associated with the delays. If the Court held that ECC properly fabricated, delivered and installed a curtain wall system and windows for the Project, that finding would entitle ECC to payment under the Subcontract, but it would not necessarily entitle D.F. Pray to payment from the Owner. That is, the resolution of the proposed third-party claims does not depend upon the resolution of ECC's claims.[3]

This Court recognizes that denying D.F. Pray's request for leave to file a third-party complaint may lead to inefficiencies arising from duplicative discovery or potentially inconsistent results. See Hicks v. Long Island R.R., 165 F.R.D. 377, 379 (S.D.N.Y. 1996)

---

ECC's work did not commence until after the September 1, 2017 deadline set forth in the subcontract. See ECF No. 22-5 at 34 (progress schedule indicating that "windows/glazing" was to be completed by September 1, 2017); ECF No. 22 at 4 (arguing that, as of December 2017, the Project's building was still undergoing structural work). As such, even if the Court were to find that ECC's work was timely, D.F. Pray may not be entitled to payment from the Owner. Conversely, finding that ECC's work was untimely would not mean that Owner is not liable to pay D.F. Pray for extra costs arising from delays on the Project.

[3] In its opposition to D.F. Pray's motion, ECC argues that International Paving Systems has little applicability to this case for a different reason. See ECF No. 22 at 2-3. According to ECC, the court in International Paving Systems held that the third-party claim was dependent on the outcome of the main claim because a provision in the subcontract agreement conditioned AVA's payment from Van-Tulco upon Van-Tulco's receipt of payment from the City. See id. at 3. ECC points out that a similar provision exists in Section 11.9 of the Subcontract between ECC and D.F. Pray which conditions payment to ECC upon D.F. Pray's receipt of payment from the Owner. See ECF No. 22-3. ECC contends that, in West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 87 N.Y.2d 148, 158 (1995), rendered a year after International Paving Systems, the New York Court of Appeals found that pay-when-paid provisions "which force[] the subcontractor to assume the risk that the owner will fail to pay the general contractor," like the provision in International Paving Systems and Section 11.9 of the Subcontract, "[are] void and unenforceable as contrary to public policy[.]" ECC argues that D.F. Pray cannot rely on Section 11.9 of the Subcontract in this case to implead the Owner or transfer the liability to pay ECC because such provision is void. See ECF No. 22 at 3. Even though ECC may be correct about the non-enforceability of the "pay-when-paid" provision, D.F. Pray does not rely on the provision in its proposed third-party complaint against the Owner.

12

("[T]he purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a re-duplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.") (citing Dery v. Wyer, 265 F.2d 804, 806-07 (2d Cir. 1959)) (internal quotation marks omitted). But Rule 14 is not a tool for consolidating actions or litigating claims arising from the same transaction or nucleus of operative facts in a single action. To the extent D.F. Pray was able to assert the same third-party claims against the Owner as counterclaims in the New York County Supreme Court, D.F. Pray is not prejudiced by the denial.[4]

D.F. Pray failed to show how the proposed third-party complaint meets the standards of Rule 14. For the foregoing reasons, this Court respectfully recommends denying D.F. Pray's request for leave to assert third-party claims against the Owner.

## III. CONCLUSION

For the reasons stated above, this Court respectfully recommends that D.F. Pray's motion for leave to commence a third-party action against the Owner be denied. This Court respectfully recommends that D.F. Pray be given 21 days to renew its motion for leave to file a third-party complaint if its claims against the Owner can comply with the standards of Rule 14.

---

[4] D.F. Pray's proposed third-party claims were already brought as counterclaims against the Owner in the New York County Supreme Court. See Verified Answer and Counterclaim, Maple Drake Austell Owner, LLC v. D.F. Pray, Inc., Index No. 655492/2019 (Sup. Ct. N.Y. Co. 2019), NYSCEF Doc. No. 12; Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## IV.  OBJECTIONS

A copy of this report and recommendation is being provided to counsel via ECF.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
        March 3, 2021

                                               _____*Vera M. Scanlon*_____
                                                        VERA M. SCANLON
                                        United States Magistrate Judge