```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
E.C. CONTRACTING, INC.,                      :
                                             :
                    Plaintiff,               :       REPORT AND RECOMMENDATION
                                             :
         -against-                           :       19 Civ. 6813 (FB) (VMS)
                                             :
D.F. PRAY, INC., FIDELITY AND DEPOSIT        :
COMPANY OF MARYLAND, and ZURICH              :
AMERICAN INSURANCE COMPANY,                  :
                                             :
                    Defendants.              :
------------------------------------------------------------ X
```

**Vera M. Scanlon, United States Magistrate Judge:**

Defendant D.F. Pray, Inc. ("D.F. Pray") moved for an Order pursuant to Federal Rule of Civil Procedure 14(a)(1) granting leave to file a third-party complaint against Maple Drake Austell Owner, LLC (the "Owner"). For the reasons set forth below, this Court respectfully recommends that the motion be denied.

## I. BACKGROUND

### a. The Underlying Action And Procedural History

The Court assumes familiarity with its Report and Recommendation at ECF No. 27. This action arises out of a construction project to convert property located at 47-37 Austell Place, Queens, New York 11109 (the "Property") from an industrial building to Class A retail and office space (the "Project"). See ECF No. 1 ¶¶ 3, 10. D.F. Pray was the general contractor retained by the Owner to complete the Project. See id. ¶ 10; ECF No. 18 at 1. D.F. Pray retained Plaintiff E.C. Contracting, Inc. ("ECC") as a subcontractor to fabricate, deliver and install a curtain wall system and windows for the Project for a sum of $2,935,000.00 (the "Subcontract"). See ECF No. 1 ¶ 11; ECF No. 18 at 1. ECC was responsible for providing labor, materials and equipment in connection with the work to be performed under the Subcontract. See ECF No. 1 ¶

1

11; ECF No. 18 at 1.

ECC alleges that it provided a total value of labor and materials in the amount of $455,008.26 which remains unpaid by D.F. Pray despite due demand.  See ECF No. 1 ¶ 15.  ECC brings three causes of action against D.F. Pray seeking repayment of amounts due: (i) breach of contract; (ii) quantum meruit; and (iii) account stated.  See id. ¶¶ 9-25.  ECC also brought claims against insurance providers Zurich American Insurance Company ("Zurich") and Fidelity and Deposit Company of Maryland ("Fidelity") which failed to pay ECC under a payment bond, numbered 09244451, for labor and materials furnished towards the Project.  See id. ¶¶ 26-37.  According to ECC, the payment bond in the amount of $25,033,675.00 was meant to guarantee prompt payment of all monies to subcontractors including ECC for work on the Project.  See id. ¶¶ 27-28.  Defendants D.F. Pray, Zurich and Fidelity (together, "Defendants") filed an answer generally denying ECC's allegations and asserting ten affirmative defenses.  See ECF No. 12.

This Court held an initial conference.  See Dkt. Minute Entry 3/17/2020; ECF No. 16.  Defendants informed the Court that there was an ongoing dispute between D.F. Pray as general contractor and the Owner in the state court, discussed further below, arising from the Project and related to this case.  See ECF No. 16 at 5:14-7:7.  According to Defendants, ECC was partially responsible for the delay damages asserted by the Owner against D.F. Pray in the state action.  See id.  The Court gave Defendants leave to bring any motion for leave to commence a third-party action or amend its answer to assert counterclaims.  See Dkt. Minute Entry 3/17/2020.  D.F. Pray subsequently filed a motion for leave to commence a third-party action against the Owner and to assert counterclaims against ECC.  See ECF No. 17.  ECC opposed.  See ECF No. 22.  This Court issued a Report and Recommendation, recommending denial of D.F. Pray's

motion to commence a third-party action on the basis that "[t]he claims asserted against the Owner in D.F. Pray's proposed third-party complaint are not derivative of or secondary to ECC's claims as required by Rule 14." ECF No. 27 at 9. This Court also recommended giving D.F. Pray 21 days to renew its motion if D.F. Pray could comply with the standards of Rule 14.[1] Id. at 13. The Report and Recommendation was adopted in full. See ECF No. 31. D.F. Pray renewed its motion for leave to file a third-party action against the Owner. See ECF No. 33. ECC opposed. See ECF No. 34. The motion was referred to the undersigned for a decision.

### b. The State Court Action

On September 20, 2019, the Owner commenced an action against D.F. Pray in the New York County Supreme Court. See Maple Drake Austell Owner, LLC v. D.F. Pray, Inc., Index No. 655492/2019, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty. Sept. 20, 2019). The Owner asserted causes of action for breach of contract, declaratory judgment and violations of New York Lien Law Sections 39 and 39-a, and seeks approximately $12,000,000.00 in damages from D.F. Pray for breach of contract. Id. ¶¶ 80-99. On October 11, 2019, D.F. Pray filed a notice of removal in the state court action. See Index No. 655492/2019, NYSCEF No. 3 (Sup. Ct. N.Y. Cnty. Oct. 11, 2019); Maple Drake Austell Owner, LLC v. D.F. Pray, Inc., No. 19 Civ. 9448 (PAE), ECF No. 1 (S.D.N.Y. Oct. 11, 2019). On January 7, 2020, the Honorable Paul A. Engelmayer remanded the case back to the New York County Supreme Court because the Owner and D.F. Pray were not diverse parties, and therefore, the Court lacked federal subject matter jurisdiction. No. 19 Civ. 9448 (PAE), ECF No. 33 (S.D.N.Y. Jan. 7, 2020). On February 4, 2020, D.F. Pray filed its Answer and Counterclaim against the Owner, bringing causes of action for breach of contract,

---

[1] In a separate order, the Court also granted D.F. Pray's motion for leave to amend its answer to assert counterclaims against ECC. See Order dated 3/3/2021.

breach of the covenant of good faith and fair dealing, violations of the Trust Funds Act, N.Y. Lien Law §§ 70, et seq., and declaratory relief.  Index No. 655492/2019, NYSCEF No. 12 ¶¶ 86-104 (Sup. Ct. N.Y. Cnty. Feb. 4, 2020).  Subsequently, the parties proceeded with discovery, including by entering into a Stipulation and Order for the Production and Exchange of Confidential Information, id., NYSCEF No. 70, and engaging in discovery-related motion practice, id., NYSCEF Nos. 74-83, 85-87.

### c. The Proposed Third-party Complaint

According to the proposed third-party complaint, D.F. Pray was retained by the Owner as a general contractor to complete the Project.  See ECF No. 33-1 ¶ 1.  On or about August 29, 2016, D.F. Pray and the Owner entered into a standard cost-based contract ("General Contract") whereby D.F. Pray would provide labor and materials and would be paid the cost of the work, plus a fee, with a guaranteed maximum price.  See id. ¶¶ 12-13.  Through an amendment dated February 13, 2017, the Owner agreed to a guaranteed maximum price of $25,033,676.00 and set the date of substantial completion of the Project for November 3, 2017.  See id. ¶ 15.  D.F. Pray and the Owner also agreed that if the work on the Project was delayed by the Owner, or its architect, or by changes in the work, the completion date would be extended and the guaranteed maximum price would be increased as necessary.  See id. ¶ 19.  Under the General Contract, the Owner was required to pay for any changes in the work and to continue making payments to D.F. Pray without delay.  See id.  After signing the amendment, D.F. Pray provided the Owner with a payment bond and performance bond in the amount of the guaranteed maximum price, $25,033,676.00, identifying the Owner as the principal and D.F. Pray as the obligee.  See id. ¶ 20.  The payment bond was intended to protect the Owner from demands, liens or suits by any subcontractors or suppliers.  See id. ¶ 21.

A few months into the Project, issues arose between D.F. Pray and the Owner. After executing the General Contract, D.F. Pray and the Owner began disagreeing as to whether the General Contract's payment provisions complied with the New York Prompt Pay Act, N.Y. Gen. Bus. Law § 756 (the "Act"). See id. ¶¶ 23-27. D.F. Pray took the position that the payment provisions violated the Act because the General Contract provided for payment 45 days after receipt of application for payment when the statute mandated payment within 37 days of the request for payment. See id. ¶ 28. The Owner disagreed that the Act applied to the Project. See id. According to D.F. Pray, the Owner's refusal to comply with the Act resulted in significant delays in payments to D.F. Pray and its subcontractors. See id. ¶¶ 30, 40-42, 48.

The problems between D.F. Pray and the Owner worsened as a result of delays on the Project. D.F. Pray alleged that work on the Project was affected by Owner-caused delays, including failure to obtain permits, incomplete or defective designs, and refusal to process and approve change orders. See id. ¶¶ 34-35. Although the Owner allegedly acknowledged that there were "excusable delays," the Owner refused to extend the completion date of the Project, refused to pay additional costs sustained by D.F. Pray as a result of the delays, and constructively accelerated the work schedule of D.F. Pray, ECC and other subcontractors. See id. ¶¶ 36-37. Even though D.F. Pray had completed approximately ninety percent of its work on the Project by August 2018, D.F. Pray was allegedly owed more than $1.9 million by the Owner. See id. ¶ 43. By letter dated August 6, 2018, D.F. Pray demanded that the Owner recognize additional costs associated with Owner-caused delays. See id. ¶ 49. The Owner did not respond to D.F. Pray's demand. See id. ¶ 50. Instead, on August 9, 2018, the Owner requested that D.F. Pray review and execute an agreement (the "Subordination Agreement") in connection with a financing. See id. The Subordination Agreement stated that the Owner's ability to complete the Project and pay

5

general contractor fees was conditioned on the lender making a loan. See id. ¶ 51. D.F. Pray refused to sign the Subordination Agreement because it set forth false representations (i) that neither D.F. Pray nor the Owner was in default under the General Contract and (ii) that all sums due and payable under the General Contract had been paid in full. See id. ¶¶ 51-52.

On August 13, 2018, D.F. Pray filed a notice of mechanic's lien in the amount of $2,199,708.50 with the Queens County Clerk and served a copy on the Owner. See id. ¶¶ 53, 56. After receipt of the mechanic's lien, the Owner demanded that D.F. Pray sign the Subordination Agreement and withdraw its lien. See id. ¶ 58. The Owner allegedly threatened to back-charge D.F. Pray for any costs arising from D.F. Pray's refusal to sign the Subordination Agreement and threatened that it would not make any payment under the General Contract until the lien was removed. See id. ¶¶ 58-59. D.F. Pray refused to withdraw its lien or sign the Subordination Agreement. See id. ¶ 63. By letter dated August 30, 2018, the Owner issued a notice of claim on D.F. Pray's performance bond. See id. ¶ 65. In the notice of claim, the Owner asserted that D.F. Pray was in breach of the General Contract because its performance was inadequate, and it had filed an improper mechanic's lien. See id. ¶ 66. By letter dated September 6, 2018, the Owner issued a notice of default on D.F. Pray, again requesting that the mechanic's lien be withdrawn. See id. ¶¶ 71-73.

In an effort to resolve the outstanding payment issues and complete the Project, D.F. Pray and the Owner conferred in good faith. See id. ¶ 74. The Owner approved a series of undisputed change orders and construction-change directives, and it expedited the funding of past-due applications for payment for May through July 2018. See id. ¶¶ 74-75. On March 12, 2019, the Owner issued a notice of substantial completion. See id. ¶ 76.

The issues between D.F. Pray and the Owner did not end. On May 9, 2019, D.F. Pray submitted an application for payment ("Application No. 30") in the amount of $721,305.39. See id. ¶ 78. By letter dated May 13, 2019, the Owner withheld payment of Application No. 30 based on D.F. Pray's refusal to withdraw the mechanic's lien. See id. ¶ 79. On August 1, 2019, D.F. Pray provided the Owner a notice of completion and requested that the Owner resolve any impediments to completing the Project. See id. ¶ 89. On September 20, 2019, the Owner filed an action in the New York County Supreme Court seeking to recover approximately $12,000,000.00. See id. ¶ 92. The Owner alleged that D.F. Pray was responsible for a 13-month delay in the Project, resulting in, inter alia, damages arising from lost rents and carrying costs. See id. ¶ 93. By letter dated November 4, 2019, the Owner issued a notice of contract termination stating that D.F. Pray had abandoned the Project, failed to timely achieve substantial completion, and performed defective work. See id. ¶¶ 94-95. The Owner terminated the General Contract for cause and locked D.F. Pray out of the Project. See id. ¶ 99. According to D.F. Pray, the Owner intentionally withheld more than $3.7 million from D.F. Pray and its subcontractors, and demanded work without payment. See id. ¶ 87. Based on the for-cause termination, the Owner claimed to be contractually entitled to withhold amounts due to D.F. Pray. See id. ¶ 100.

On December 4, 2019, ECC filed a complaint in this action against D.F. Pray and its surety, alleging D.F. Pray failed to make payments to ECC for labor, materials and equipment provided by ECC, leaving a sum due and owing to ECC in the amount of $455,008.26. See id. ¶ 106. In ECC's complaint, ECC brings claims for breach of contract, quantum meruit, and account stated against D.F. Pray, and a claim for breach of payment bond against its surety. See id. ¶ 107. The Subcontract between ECC and D.F. Pray, upon which ECC sues D.F. Pray,

incorporated the General Contract, and was intended for the Owner's benefit. See id. ¶ 128. D.F. Pray alleged the Owner was the foreseeable and intended beneficiary of the Subcontract between D.F. Pray and ECC, and that the Owner and ECC were therefore in functional privity of contract. See id. ¶¶ 130-131. D.F. Pray also alleged the Owner owed a duty to both D.F. Pray and ECC to make timely payments in accordance with the General Contract and the Act, and breached its duty to D.F. Pray and ECC by failing to timely pay D.F. Pray for work its subcontractors, including ECC, performed on the Project. See id. ¶¶ 132-133.

Based on these allegations, D.F. Pray alleged five claims against the Owner: (i) breach of contract relating to the Owner's refusal to make timely progress payments, to extend the completion deadline or to pay for extra work; (ii) breach of the covenant of good faith and fair dealing for, inter alia, retaliating against D.F. Pray; (iii) violation of the Trust Funds Act, N.Y. Lien Law §§ 70, et seq., by failing to identify and account for receipt and payment of trust funds; (iv) declaratory relief finding the Owner in default under the General Contract; and (v) common-law indemnification from the Owner to the extent D.F. Pray is found liable to ECC based on its Subcontract with ECC. See id. ¶¶ 108-135.

Through its motion to add an action against the Owner, D.F. Pray seeks to be able to resolve all claims relating to the Project in a single forum. See ECF No. 33 at 2. D.F. Pray argues that impleader is appropriate because the proposed third-party complaint asserts a claim of indemnification against the Owner, see id. at 2-3, and argues that this Court has supplemental jurisdiction over the Owner, a non-diverse party, see id. at 3-4. ECC opposed the motion for impleader for three reasons: (i) D.F. Pray's claims against the Owner are not derivative of or dependent on the resolution of ECC's claims against D.F. Pray; (ii) the addition of an indemnity claim does not rectify the deficiencies this Court previously found with D.F. Pray's proposed

third-party complaint; and (iii) D.F. Pray's pleadings fail to establish the breach of duty required to sustain an indemnification claim.  See ECF No. 34.

## II.     DISCUSSION

### a. Motion For Leave To File A Third-party Complaint

D.F. Pray seeks leave to file a third-party complaint against the Owner asserting five claims: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) violation of the Trust Funds Act; (iv) declaratory relief; and (v) common-law indemnification. This Court respectfully recommends that the motion be denied.

Rule 14(a)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  If the defendant seeks to file a third-party complaint more than 14 days after serving its original answer, it must obtain leave of court.  See id.  "A district court has considerable discretion in determining a Rule 14(a) motion."  Capitol Recs., Inc. v. City Hall Recs., Inc., No. 07 Civ. 6488 (LTS) (KNF), 2008 WL 2811481, at *2 (S.D.N.Y. July 18, 2008); see E. Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co., 490 F.2d 1234, 1246 (2d Cir. 1973).

A third-party claim may be asserted when the third party's liability is somehow dependent on the outcome of the main action or when the third party is secondarily liable to the defendant.  See, e.g., Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984) (noting that third-party claim is appropriate where third-party defendant's liability is "dependent upon the outcome of the main claim" or the third-party defendant is "potentially secondarily liable as a contributor to the defendant"); Falcone v. MarineMax, Inc., 659 F. Supp. 2d 394, 401-02 (E.D.N.Y. 2009) ("Regardless of the type of claim asserted, [t]he outcome of the

9

third-party claim must be contingent on the outcome of the main claim.") (citation & internal quotation marks omitted; alteration in original); Siemens Westinghouse Power Corp. v. Dick Corp., 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.  In other words, the outcome of the third-party claim must be contingent on the outcome of the main claim . . . .") (citations, internal quotation marks & alteration omitted), amended, 219 F.R.D. 326 (S.D.N.Y. 2004).  Thus, "[t]he traditional grounds for a third-party action are indemnification, contribution, or subrogation." Intellipayment, LLC v. Trimarco, No. 15 Civ. 1566 (JFB) (GRB), 2016 WL 1239261, at *3 (E.D.N.Y. Mar. 29, 2016).  The party seeking to implead a third party bears the burden of showing that impleader is appropriate.  See Schoenholtz v. Doniger, No. 83 Civ. 2740 (IBC), 1984 WL 374, at *5 (S.D.N.Y. May 4, 1984) ("[A] defendant attempting to implead a third party bears the burden of showing that if he is found liable to the plaintiff, then the third party will in turn be liable to him.").

      The Court notes at the outset that D.F. Pray has submitted virtually the same proposed third-party complaint as the one that the Court denied leave to file but added an additional nine paragraphs asserting a claim for common-law indemnification to the proposed complaint reviewed herein.  Compare ECF No. 17-1, with ECF No. 33-1.  For the reasons stated in this Court's prior Report and Recommendation, see ECF No. 27, and the Memorandum and Order adopting the Report and Recommendation, see ECF No. 31, that the Court will not repeat here, the third-party complaint's proposed claims against the Owner of (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) violation of the Trust Funds Act; and (iv) declaratory relief are not derivative of or dependent upon the claims asserted by ECC, and

10

fail to meet the standards of Rule 14.  The question now before the Court is whether the additional claim of common-law indemnification against the Owner saves the day.  It does not.

### b. Indemnification

"Under New York Law, the common law right to indemnification arises when one party is compelled to pay for the wrong of another." See Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A., 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) (quoting Westport Marina, Inc. v. Boulay, No. 06 Civ. 5569 (RH) (AKT), 2010 WL 4340343, at *4 (E.D.N.Y. Oct. 25, 2010)).  A cause of action for common-law indemnification may be sustained when: "(1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." Id. (citing Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture, No. 06 Civ. 181 (GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007), aff'd sub nom. In re Century/ML Cable Venture, 311 F. App'x 455 (2d Cir. 2009)).

In New York, there ordinarily is no contractual privity between owners and subcontractors.  See Morse/Diesel, Inc. v. Trinity Indus., Inc., 875 F. Supp. 165, 174-75 (S.D.N.Y. 1994); N. Moore St. Devs., LLC v. Meltzer/Mandl Architects, P.C., 23 A.D.3d 27, 30-31 (1st Dep't 2005); Mariacher Cont. Co., Inc. v. Kirst Constr., Inc., 187 A.D.2d 986, 987 (4th Dep't 1992).  When an owner and subcontractor engage in direct dealings, however, the "functional equivalent of privity" may be established despite the lack of a formal contract.  See City Sch. Dist. of City of Newburgh v. Hugh Stubbins & Assocs., Inc., 85 N.Y.2d 535, 538-39 (1995) (plaintiff who exerted significant control over a construction project had a relationship that was the functional equivalent to privity); RLI Ins. Co. v. King Sha Grp., 598 F. Supp. 2d 438, 443-44 (S.D.N.Y. 2009) (finding privity where owner paid subcontractor directly rather

11

than through its general contractor and owner required subcontractor's project manager to initial owner's records confirming cash payments); Rotterdam Square v. Sear-Brown Assocs. P.C., 246 A.D.2d 871, 871-72 (3d Dep't 1998) (finding privity where subcontractor knew that work was for benefit of the owner); U.S. E. Telecomms., Inc. v. U.S. W. Info. Sys., Inc., No. 87 Civ. 2924 (KTD) (THK), 1993 WL 385810, at *21 (S.D.N.Y. Sept. 30, 1993) (evidence that owner assumed payment obligations toward subcontractor may demonstrate privity) (collecting cases), aff'd sub nom. U.S. E. Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289 (2d Cir. 1994); see also Bubonia Holding Corp. v. Jeckel, 189 A.D.2d 957, 958 (3d Dep't 1993) (contractual privity between owner and subcontractor was not shown where subcontractor was paid by and dealt exclusively with contractor, not owner); R.H. Sanbar Projects, Inc. v. Gruzen P'ship, 148 A.D.2d 316, 320 (1st Dep't 1989) (although subcontractors ordinarily lack privity to assert claims against owners, an owner, as "foreseeable and intended beneficiary" of general contractor-subcontractor agreement, may proceed against subcontractor).

A claim for common-law indemnification would require that both the Owner and D.F. Pray breached a duty to ECC. See Perkins Eastman Architects, 769 F. Supp. 2d at 329; Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24 (1985). Here, the proposed complaint does not allege that the Owner and ECC had a direct contractual relationship. Although D.F. Pray alleges that the Owner was the foreseeable and intended beneficiary of the Subcontract between D.F. Pray and ECC such that the Owner and ECC were therefore in functional privity of contract, see ECF No. 33-1 ¶¶ 130-131, the proposed third-party complaint is devoid of allegations that the Owner and ECC ever engaged directly with one another in any capacity. The weight of the case law works against D.F. Pray, and functional privity cannot be found on the proposed third-party

12

complaint's bare allegations. Without allegations sufficient to plead functional privity, the third-party complaint fails to allege the required breach of duty for common-law indemnification.[2, 3]

### c. Leave To Renew

Although it may be the case that D.F. Pray could amend its proposed third-party complaint to plead an indemnification claim, the Court, in its discretion, declines to recommend affording D.F. Pray another opportunity to do so.

First, the proposed third-party complaint, even if the additional indemnification claim was adequately plead, does not sufficiently relate to ECC's claims. Rule 14(a) was "designed to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part

---

[2] As the Court declines to find the proposed third-party complaint meets the requirements of Rule 14, it need not address whether the Court should exercise supplemental jurisdiction over the Owner, a non-diverse party.

[3] Even if properly plead, "Rule 14 provides only the procedural mechanism for impleader; the substantive merit of the action depends on the federal or state theory of . . . indemnity . . . asserted in the third-party complaint." Crews v. Cnty. of Nassau, 612 F. Supp. 2d 199, 204 (E.D.N.Y. 2009). Thus, to the extent that D.F. Pray seeks indemnification from the Owner for any damages it must pay ECC, the basis for indemnification must exist under New York law. The Court "finds that it need not ultimately decide whether New York would recognize [D.F. Pray's] third-party claim" because it finds that the indemnification claim is not adequately pleaded. See Greene v. City of N.Y., No. 08 Civ. 243 (RJD) (CLP), 2010 WL 1936224, at *6 (E.D.N.Y. May 12, 2010). The Court notes the intricacies of New York construction case law may preclude a finding that the Owner owed a duty to ECC, even if functional privity were established, based on the directionality of functional privity in the construction context. See R.H. Sanbar Projects, 148 A.D.2d at 320 (citing Port Chester Elec. Const. Co. v. Atlas, 40 N.Y.2d 652, 655-56 (1976)) ("The subcontractor is not a foreseeable beneficiary of the contract between an owner and a general contractor."); Stapleton v. Pavilion Bldg. Installation Sys., Ltd., No. 09 Civ. 934S, 2017 WL 431801, at *3 (W.D.N.Y. Feb. 1, 2017) (citing Brownell Steel, Inc. v. Great Am. Ins. Co., 28 A.D.3d 842, 843 (3d Dep't 2006) ("However, the [functional privity] exception appears to apply only in one direction: a property owner may sue a subcontractor, but a subcontractor is generally not found to be in privity or a third party beneficiary to a property owner.")), aff'd sub nom. Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28 (2d Cir. 2018); see also Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc., No. 12 Civ. 11121 (DJC), 2015 WL 5156553, at *5 (D. Mass. Sept. 2, 2015) (applying New York law).

of the plaintiff's claim." Falcone, 659 F. Supp. 2d at 401 (citation & internal quotation marks omitted; emphasis added).  D.F. Pray seeks relief for potential claims that go above and beyond ECC's claims in this action by seeking: "indemnification for any liability incurred by Pray for Owner's failure to pay Pray for work Pray and its subcontractors, including EC performed." ECF No. 33-1 ¶ 1 (emphasis added); see also id. ¶ 101 (seeking payment from the Owner for the entire Project).  As discussed at length in the previous Report and Recommendation, the proposed third-party complaint continues to revolve around "affirmative and equitable claims that involve different legal and factual issues [that] are inappropriate under Rule 14."  See ECF No. 27 at 10.

Second, as before, allowing interpleader here serves neither the interests of justice nor judicial economy.  See iBasis Glob., Inc. v. Diamond PhoneCard, Inc., 278 F.R.D. 70, 74 (E.D.N.Y. 2011).  Aside from the indemnification claim, all of D.F. Pray's claims against the Owner have already been brought as counterclaims in a state court action, which was commenced in 2019.  See Maple Drake Austell Owner, LLC v. D.F. Pray, Inc., Index No. 655492/2019, NYSCEF No. 12 ¶¶ 86-104 (Sup. Ct. N.Y. Cnty. Feb. 4, 2020).  Not only would allowing D.F. Pray to file its claims in federal court run the risk of inconsistent verdicts in state and federal court, it would duplicate the efforts already undertaken by the Honorable Robert R. Reed in overseeing discovery in that state court action.  See id., NYSCEF No. 70 (Stipulation and Order for the Production and Exchange of Confidential Information), NYSCEF Nos. 74-83, 85-87 (motion to compel and discovery sanction motion practice).  Discovery in federal court would be largely duplicative of discovery covered by the Commercial Division's case management.

Third, D.F. Pray already attempted to remove that state case to federal court and lost. Maple Drake Austell Owner, LLC v. D.F. Pray, Inc., No. 19 Civ. 9448 (PAE), ECF No. 33 (S.D.N.Y. Jan. 7, 2020) (remanding case to state court for lack of subject matter jurisdiction). As before, "even if Pray had made a stronger showing under Federal Rule of Civil Procedure 14, the Court would not exercise its supplemental jurisdiction in aid of Pray's efforts to circumvent Judge Englemayer's ruling and shop for a federal forum." ECF No. 31 at 9-10. This Court will not now recommend giving D.F. Pray another bite at the apple.

### III.   CONCLUSION

For the reasons stated above, this Court respectfully recommends that D.F. Pray's motion for leave to commence a third-party action against the Owner be denied.

### IV.   OBJECTIONS

A copy of this Report and Recommendation is being provided to counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14)-day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court

or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated: Brooklyn, New York
January 12, 2022

                                            *Vera M. Scanlon*
                                            VERA M. SCANLON
                                            United States Magistrate Judge